## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RACHEL J. GREEN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00053 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,**[1] | ) | |
| | ) | |
| Defendant. | ) | |

*Pamela A. Counts, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Sandra Romagnole, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Rachel J. Green filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security

_____

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

Act (the "Act"), 42 U.S.C.A. §§ 1381-83f (West 2012).  Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Green protectively applied for SSI on July 10, 2008, alleging inability to work due to a combination of mental and physical impairments.  Her claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ") on April 27, 2010, at which Green, represented by counsel, and a vocational expert ("VE") testified.  On May 14, 2010, the ALJ issued a decision finding that Green could perform a modified range of light work and thus was not disabled under the Act.  Green requested review by the Social Security Administration's Appeals Council.  The Appeals Council denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner.  Green then filed a complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Green was 26 years old when her application was filed, making her a younger individual under the regulations.  *See* 20 C.F.R. § 416.920(g)(1) (2012). She attended school through the ninth grade and obtained a general equivalency

diploma.  She has no significant work history.  Green claims disability based on Crohn's disease, bipolar disorder, depression, anxiety, and borderline intelligence. Her arguments on appeal solely concern her mental limitations, so the recitation of the facts will be limited to those alleged impairments.

Green asserts that she has suffered from depression and anxiety since age seventeen.  She began seeing Uzma Ehtesham, M.D., in May 2008, reporting that she felt tired and guilty.   Dr. Ehtesham prescribed antidepressant and anxiety medication and recommended sleep strategies and participation in positive leisure and productive activities.   Dr. Ehtesham gave Green a global assessment of functioning ("GAF") score of 60.[2]  In July 2008, Dr. Ehtesham rated Green's depression as a ten on a one-to-ten scale.  In September 2008, Dr. Ehtesham rated Green's GAF as 65 and noted that her condition was stable.  (R. at 340-41.)  By December 2008, Green's depression was assessed as a two out of ten, but in March 2009, Green's anxiety and depression were both rated at five out of ten.  The rating numbers assigned by Dr. Ehtesham varied widely throughout her treatment of Green.  In February 2009, Dr. Ehtesham indicated that while Green's insight was

_____

[2]   A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

poor, her judgment was intact and her reality testing improved. (R. at 328.) Dr. Ehtesham continued to treat Green through May 2010.

On July 9, 2008, Luciano D'Amato, M.D., who treated Green for problems related to Crohn's disease, noted that Green was "pleasant, alert and oriented." (R. at 256.) According to Dr. D'Amato's notes, in August 2008, Green reported that she worked as a bus monitor.

In September 2008, Julie Jennings, Ph.D., reviewed Green's medical record on behalf of the state agency. She noted that Green had a moderate degree of difficulty in maintaining concentration, persistence, or pace. (R. at 238.) After noting several other moderate limitations, Dr. Jennings concluded that Green was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (R. at 250.)

In January 2009, Joseph I. Leizer, Ph.D., reviewed Green's records at the request of the state agency. Dr. Leizer also noted several moderate limitations but concluded that Green's "mental state is largely unremarkable" and "she would appear to retain the mental capacity to perform at least simple, unskilled and nonstressful work." (R. at 289.)

By December 2009, Green had discontinued her use of antidepressant and anti-anxiety medications, and Isam T. Zibdeh, M.D., indicated that "she did all right [*sic*] as far as her mental status without her medications." (R. at 370.) On

-4-

December 2, 2009, Dr. Zibdeh described Green as "alert, oriented and in no acute distress, pleasant and cooperative." (R. at 375.) On February 9, 2010, Thomas Roatsey, D.O., indicated that Green's neurological and psychological examination results were within normal limits.

In April 2010, Robert S. Spangler, Ed.D., conducted a psychological examination of Green. He noted that she had suffered a panic attack while driving to see him and her boyfriend had driven her to and from the appointment. Dr. Spangler found Green's social skills to be adequate but noted that she was tearful at times during the evaluation. Dr. Spangler diagnosed Green with, inter alia, moderate to severe bipolar disorder, moderate panic disorder, borderline intelligence, and erratic concentration, and gave her a GAF score of 55-50. These assessments were based in part upon Green's self-reported diagnoses. Dr. Spangler completed a Medical Assessment of Ability to do Work-Related Activities (Mental) in which he opined that Green had poor to no ability to relate to coworkers, deal with work stress, understand, remember, and carry out job instructions (both complex and detailed but not complex), behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. (R. at 422-23.) According to Dr. Spangler, Green's impairments would require her to miss more than two days a month.

At the hearing, Green testified that she cares for her two young children mostly by herself, with occasional help from the children's father. She supports herself and her children solely through government assistance and does not receive child support from the children's father. Green testified that she has trouble sleeping, experiences tearfulness, and suffers from panic attacks. She drives locally, though she does not drive on the interstate due to her anxiety attacks.

The VE opined that Green would be able to perform a range of unskilled clerical work, and at least 4,800 positions of that kind exist in Virginia, with at least 100,000 such positions in existence in the national economy. The VE further opined that Green could perform the work of a laundry worker, doing sorting, folding, packaging, and labeling tasks. According to the VE, 3,500 of these jobs exist in Virginia and at least 95,000 exist in the nation. A product packager position would also be a possibility for Green. There are at least 3,000 of these positions in Virginia, and at least 80,000 nationally.

The ALJ found that Green had bipolar disorder, depression, anxiety, Crohn's disease, and asthma, and that these were severe impairments. The ALJ found that Green experienced mild restriction in activities of daily living; moderate difficulties in social functioning and concentration, persistence, or pace; and had experienced no episodes of decompensation. The ALJ found that Green's "level of functioning and very minimal level of care for psychiatric problems suggests far

fewer restrictions that that self reported by [Green]."  (R. at 21.)  Thus, the ALJ

concluded that Green had the residual functional capacity ("RFC") to perform light

work with some limitations.  The ALJ specifically exempted work that

> cannot be done by an individual who has moderate reduction in
> concentration and thus is limited to simple, non-complex tasks;
> requires direct interaction with the public; or cannot be done by an
> individual who, though able to work in proximity to other people,
> cannot perform jobs that require working interactively with others to
> complete tasks.

(R. at 21.)  Based on this RFC assessment and the VE's testimony, the ALJ held

that Green was capable of performing jobs that exist in significant numbers in the

national economy and therefore was not disabled as defined by the Act.

Green contests the ALJ's decision, arguing that it is not supported by

substantial evidence.  The Commissioner contends that the evidence of record

supports the ALJ's finding that Green is not disabled under the Act.


III

The plaintiff bears the burden of proving that she is under a disability.

*Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  The standard for

disability is strict.  The plaintiff must show that her "physical or mental

impairment or impairments are of such severity that [she] is not only unable to do

[her] previous work but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The ALJ carefully considered and weighed all of the medical evidence presented. She did not find Dr. Spangler's one-time psychological assessment to be credible, as Dr. Spangler's opinions were contradicted by other evidence in the record. While the ALJ found that Green's impairments could reasonably be expected to cause the alleged symptoms, she did not find credible Green's statements regarding the intensity, persistence, and limiting effects of her symptoms. The ALJ noted that Green had not taken anti-anxiety or antidepressant medications for some time, yet she was still able to serve as the primary caregiver for her two small children. The ALJ afforded great weight to the opinions of Dr. Jennings and Dr. Leizer, finding them consistent and well-supported by the record.

Based on my review of the record, I conclude that the ALJ's decision was supported by substantial evidence, and it will be affirmed.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   March 22, 2013

/s/  James P. Jones
United States District Judge